IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| CUMBERLAND AND OHIO CO. ) | |
| OF TEXAS, as Court-Appointed Receiver ) | |
| of the assets of Mid-America Energy, Inc. ) | |
| and Mid-America Oil & Gas, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:09-cv-436 |
| ) | Judge Trauger |
| CLINTON C. GOFF, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM

Pending before the Court is defendant Clinton C. Goff's Motion to Dismiss (Docket No. 16), the plaintiff's response (Docket No. 19), and the defendant's reply (Docket No. 22). For the reasons discussed below, the defendant's motion will be granted.

## BACKGROUND

This case arises out of securities fraud violations that were the subject of several related lawsuits, which are now consolidated before this court under *Waldemar E. Albers Revocable Trust, et al., v. Mid-America Energy, Inc., et al.*, No. 3:07-cv-421.[1] In *Waldemar*, investors sued Mid-America Energy, Inc. ("MAE") and Mid-America Oil & Gas, LLC ("MAO&G"), among others, for the fraudulent sale of unregistered securities. The investors alleged that certain

---

[1] Unless otherwise noted, the allegations are drawn from the Verified First Amended Complaint (Docket No. 9).

1

private placement memoranda issued by the *Waldemar* defendants contained misrepresentations and material omissions and that the defendants intended to defraud the investors, in violation of federal and Tennessee securities laws. The *Waldemar* investors' complaint was filed on April 16, 2007.[2] (*See* Case No. 3:07-421, Docket No. 1.) On September 27, 2007 and June 10, 2008, the court entered default judgments in the *Waldemar* actions totaling $5,720,300, for which MAE, MAO&G, and other defendants were jointly and severally liable. The court appointed Cumberland and Ohio of Texas, Inc. ("C&O") as receiver of the assets of MAE and MAO&G, giving C&O the authority to sue and collect obligations on the companies' behalf.

C&O filed the initial complaint in the instant case against Clinton C. Goff ("Goff") on May 15, 2009, alleging claims for contribution pursuant to the Tennessee Securities Act and breach of fiduciary duty. (*See* Docket No. 1.) From August 2005 forward, MAE and MAO&G offered and sold securities in the form of limited liability partnership units in oil and gas development well projects. The plaintiff alleges that Goff became the operations manager for MAE in March 2006. As operations manager, Goff allegedly contacted prospective investors, coordinated sales agent activities, and developed sales content for the companies' web site. The various sales pitches allegedly contained misrepresentations regarding MAO&G's standing with regulators in Texas. The plaintiff alleges that Goff directly and indirectly controlled MAE, and that, as an employee of MAE and an agent of MAE and MAO&G, he materially aided the companies' violations of the Tennessee Securities Act.

## ANALYSIS

---

[2] The complaints in the four other related cases were each filed April 16, 2007 or later.

The plaintiff alleges that Goff is liable for contribution because he controlled MAE and MAO&G and aided their violations of the Tennessee Securities Act. Goff has filed a Motion to Dismiss the plaintiff's contribution claim pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the claim is time barred.

## I.   Motion to Dismiss Standard

In deciding a motion to dismiss for failure to state a claim under Rule 12(b)(6), the court will "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007); *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). The Federal Rules of Civil Procedure require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)). The court must determine whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The complaint's allegations, however, "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009). If the complaint's allegations "do not justify any reasonable inference that a claim was timely filed,"

3

the court should dismiss the claim. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 522 (6th Cir. 2008).

## II. The Plaintiff's Contribution Claim

Goff argues that the relevant statute of limitations precludes the plaintiff's contribution claim. The resolution of Goff's motion hinges on the proper application of the Tennessee Security Act's statute of repose.[3]

### A. The Tennessee Securities Act's Statute of Repose

The Tennessee Securities Act ("the Act") provides for joint liability among persons who control a company that has violated the Act or who aid a company's violation of the Act. In the same subsection, the Act allows contribution claims by liable defendants:[4]

> Every person who directly or indirectly controls a person liable under this section, every partner, principal executive officer, or director of such person, [and every employee or] agent who materially aids in . . . the violation . . . are also liable jointly and severally with and to the same extent as such person . . . . There is contribution as in cases of contract among the several persons so liable.

Tenn. Code Ann. § 48-2-122(g). The next subsection provides two repose periods:

> No action shall be maintained under this section unless commenced before the expiration of five (5) years after the act or transaction constituting the violation or the expiration of two (2) years after the discovery of the facts constituting the violation, or after such discovery should have been made by the exercise of

---

[3] In their briefs, the parties refer to the "statute of limitations," but, as discussed below, in the context of contribution claims, the relevant subsection of the Tennessee Securities Act functions more as a statute of repose.

[4] Other subsections create primary liability for violations of the Act. *See* Tenn. Code Ann. § 48-2-122(a)-(d).

4

reasonable diligence, whichever first expires.

*Id.* § 48-2-122(h).

The defendant argues that a claim for contribution pursuant to section 48-2-122(g) is an "action maintained under [section 48-2-122]" and is thus governed by the statute of repose, and that the plaintiff's claim is untimely because the facts constituting Goff's violation were known more than two years before the instant suit was filed. (Def.'s Reply, Docket No. 22, at 2-6.) The court agrees with the defendant and finds that the contribution claim should be dismissed.

As an initial matter, any timeliness defense that Goff could raise against MAE and MAO&G can also be raised against their receiver. "A receiver takes the title of the corporation or individual whose receiver he or she is and any defense which would have been good against the former may be asserted against the latter, such as the defense of a statute of limitations." 65 Am. Jur. 2d *Receivers* § 372 (2008); *see also Kings, Inc. v. Md. Cas. Co.*, 88 S.W.2d 456, 458 (Tenn. 1935) ("[A]ny defense good against [the company in receivership] was good against the receiver. . . . The statute of limitations runs against a receiver . . . ."); *Armstrong v. McAlpin*, 699 F.2d 79, 89 (2d Cir. 1983) ("[D]efenses such as the statute of limitations, which might have been interposed against persons represented by a receiver[,] may be interposed against the receiver."). "Because they stand in the shoes of the entity in receivership, receivers have been found to lack standing to bring suit unless the receivership entity could have brought the same action." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 625 (6th Cir. 2003); *see also Willingham v. Gallatin Group, Inc.*, No. M1998-00990-COA-R3-CV, 2001 Tenn. App. LEXIS 99, at *25 (Tenn. Ct. App. Feb. 16, 2001) (noting "the general rule that, upon appointment, a receiver steps into and

5

stands in the shoes of the dissolving corporation with exactly the same rights and obligations that the corporation had"). MAE and MAO&G's knowledge of the events constituting Goff's alleged violations of the Act will be imputed to their receiver for statute of repose purposes. *See O'Melveny & Myers v. FDIC*, 512 U.S. 79, 86 (1994) (imputing the knowledge of an S&L's directors to the S&L's receiver for purposes of a defense to the receiver's tort claim), *cited in Stewart Title Guar. Co. v. FDIC*, 936 S.W.2d 266, 269 (Tenn. Ct. App. 1996).

There is no Tennessee case law addressing the application of the Act's statute of repose to a contribution claim, so this court will attempt to predict how the state's high court would decide the issue. *Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 624 (6th Cir. 2008). When interpreting statutes, the Tennessee Supreme Court looks first to the plain language of the statute. "When a statute is clear, we apply the plain meaning without complicating the task. Our obligation is simply to enforce the written language." *In re Estate of Tanner*, No. M2006-02640-SC-R11-CV, 2009 Tenn. LEXIS 653, at *7 (Tenn. Oct. 7, 2009) (citation omitted). "[S]tatutes whose terms are plain and unambiguous require no construction and should be enforced according to their plain terms," *Seiber v. Reeves Logging*, 284 S.W.3d 294, 301 (Tenn. 2009), and "forced or subtle construction that would limit or extend the meaning of the language" is not preferred. *Carson Creek Vacation Resorts v. Dep't of Revenue*, 865 S.W.2d 1, 2 (Tenn. 1993).

Here, the plain language of the statute compels dismissal of the contribution claim. On its face, the statute states that "no action shall be maintained under this section" unless the action complies with the repose period. Tenn. Code Ann. § 48-2-122(h). Subsection (g) explicitly

6

authorizes contribution claims, so such claims must be considered actions "under" section 48-2-122.[5]  Subsection (h) bars all actions filed "two (2) years after the discovery of the facts constituting the violation."  *Id.*  The alleged violation here is Goff's conduct in controlling MAE and MAO&G and in aiding the companies' violation of the Act.[6]  The companies obviously knew Goff's role and responsibilities within their organizations, and they knew of Goff's involvement in their own violations; the plaintiff makes no allegations or arguments to the contrary.[7]  In fact, the plaintiff argues that the companies "conceal[ed] Defendant Goff's role and involvement in the scheme."  (Pl.'s Resp., Docket No. 19, at 7.)  At the latest, MAE and MAO&G were given notice of their own violations – and thus of Goff's alleged violations – when the *Waldemar* investors filed their complaint in April 2007.  The instant contribution claim was not filed until May 15, 2009, more than two years later.  Accordingly, the claim is barred by subsection (h).

The plaintiff spends most of its brief explaining, correctly, that a claim for contribution

---

[5] This is particularly true because, as discussed below, contribution is generally not available to parties found liable for intentional wrongdoing.

[6] It is possible that, in the case of contribution claims, the legislature intended "the violation" in subsection (h) to be the same as "the violation" in subsection (g), which here is MAE and MAO&G's own violation of the Act.  This would not materially change the court's analysis, because the companies' violations were discovered, at the latest, by the time the *Waldemar* investors filed their complaint in April 2007.

[7] Although the statute refers to "the discovery of the facts constituting the violation," it does not specify *who* must discover the facts.  Tenn. Code Ann. § 48-2-122(h).  But the entire subsection concerns whether an action can "be maintained"; the implied actor is the plaintiff filing the action.  The court finds that "the discovery" similarly refers to *the plaintiff's* discovery of the facts.  The plaintiff here is the receiver for MAE and MAO&G, so the relevant inquiry is the discovery by those companies.

7

does not accrue until a party has paid more than its share of a joint liability, and that statutes of limitations generally do not begin to run until a claim accrues. (Docket No. 19 at 3-6.) The plaintiff frames the central issue as: "[W]hen did the contribution claims accrue?" (*Id.* at 3.) But given the plain language of the Act, the date of accrual is irrelevant. The two-year repose period begins running upon "the discovery of the facts constituting the violation," not upon the accrual of a claim. In numerous other statutes, the Tennessee legislature has explicitly triggered the running of a limitations period on the accrual of the claim. *See, e.g.*, Tenn. Code Ann. § 28-3-104 (statute of limitations for various torts, requiring suit within one year "after the cause of action accrued"); *id.* § 28-3-105 (regarding property torts, starting the limitations period "from the accruing of the cause of action"); Tenn. Code Ann. § 28-3-109 (regarding contracts, starting the limitations period "after the cause of action accrued"). Here, the trigger is instead an event that is not necessarily related to accrual.

Because of this, section 48-2-122(h) functions as a statute of repose, not a statute of limitations, with regard to contribution claims. In Tennessee, "[a] statute of limitations normally governs the time within which legal proceedings must be commenced after a cause of action accrues. A statute of repose, on the other hand, limits the time within which an action may be brought and is unrelated to the accrual of any cause of action." *Calaway ex rel. Calaway v. Schucker*, 193 S.W.3d 509, 515 (Tenn. 2005). A key distinction between the two is that "a statute of repose may have the effect of barring a claim before it accrues or even before the plaintiff becomes aware of his or her injury." *Hooper v. Moser*, No. M2001-02702-COA-R3-CV, 2003 Tenn. App. LEXIS 734, at *14 (Tenn. Ct. App. Oct. 22,

8

2003). The plain language of subsection (h) starts the two-year period running upon the discovery of a violation of the Act, which is unrelated to the accrual of a contribution claim.[8] It is not surprising, then, that the statute might sometimes bar a contribution claim before it has accrued.

The right of contribution for entities found liable under the Act is thus somewhat circumscribed. But the right of contribution is not nullified by the court's reading of the statute – defendants are free to file third-party claims for contribution as soon as they are initially sued. *See* Tenn. R. Civ. P. 14.01. The Tennessee Supreme Court has held that such contribution claims are not premature. *Velsicol Chem. Corp. v. Rowe*, 543 S.W.2d 337, 343-44 (Tenn. 1976). Furthermore, it is not unusual to deny an intentional tortfeasor a right to contribution. Tennessee's legislature did exactly that in 1968 when it adopted the Uniform Contribution Among Tort-Feasors Act, which generally denies contribution to those found liable for intentional torts. *Dykes v. Raymark Industries, Inc.*, 801 F.2d 810, 813 (6th Cir. 1986); Tenn. Code Ann. § 29-11-102(c). The right to contribution contained in the Tennessee Securities Act is thus an exception to the general rule, and it is perfectly plausible that the legislature would

---

[8] Fraud claims, however, accrue when the plaintiff discovers his or her injury and the cause thereof. *Med. Educ. Assistance Corp. v. Mehta*, 19 S.W.3d 803, 817 (Tenn. Ct. App. 1999). So for a plaintiff bringing a fraud claim under the Act, section 48-2-122(h) is effectively a statute of limitations, because the two-year period begins running at the same time the claim accrues. In cases involving such claims, courts typically refer to the two-year period as a limitations period. *E.g.*, *Montcastle v. American Health Sys.*, 702 F. Supp. 1369, 1374 (E.D. Tenn. 1988). In contrast, the five-year period is consistently called a repose period. *E.g., French v. First Union Sec., Inc.*, 209 F. Supp. 2d 818, 826 (M.D. Tenn. 2002); *Fite v. Fite*, No. 02A01-9710-CH-00266, 1999 Tenn. App. LEXIS 307, at *18-19 (Tenn. Ct. App. May 19, 1999) (same).

attach harsh conditions to such a right. Certainly, this outcome is not so absurd as to force the court to look beyond the plain language of the statute. *See State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000) ("[W]e will not apply a particular interpretation to a statute if that interpretation would yield an absurd result.").

Finally, the parties have not cited, and the court's research has not found, any relevant cases from other states.[9] Two federal cases have addressed similar statutory language, but they offer limited guidance. *Asdar Group v. Pillsbury, Madison & Sutro*, 99 F.3d 289 (9th Cir. 1996); *In re the Leslie Fay Cos., Inc. Sec. Litig.*, 918 F. Supp. 749 (S.D.N.Y. 1996). *Asdar* and *Leslie Fay* looked to §§ 9 and 18 of the Securities Exchange Act of 1934 ("the 1934 Act") to determine when the limitations period begins to run on Rule 10b-5 contribution claims. Rule 10b-5, which was promulgated under section 10(b) of the 1934 Act, makes it unlawful to defraud securities buyers. 17 C.F.R.§ 240.10b-5. But because Rule 10b-5 provides an implied right of action, there is no explicit statute of limitations, and courts are forced to borrow a limitations period from other statutes. *Asdar*, 99 F.3d at 292.

Both § 9 and § 18 of the 1934 Act provide a right of contribution.[10] Section 9 further

---

[9] Analogous statutes in many other jurisdictions avoid the issue presented in this case. *See, e.g.*, S.D. Codified Laws § 47-31B-509(g)-(h), (j). The Tennessee Securities Act is based on the Uniform Securities Act of 1956. *Clayton v. Heartland Res., Inc.*, 2009 U.S. Dist. LEXIS 24608, at *26 (W.D. Ky. Mar. 24, 2009). More recent versions of the Uniform Securities Act explicitly exclude contribution claims from the repose periods listed in the statute. *See* Unif. Sec. Act 2002 § 509(g)-(h), (j).

[10] Sections 9 and 18 both allow contribution "as in cases of contract." This phrasing results from the fact that, in the early 20th century, contribution was generally not available for torts. *Asdar*, 99 F.3d at 295 n.8. Presumably, the identical phrase in the Uniform Securities Act of 1965, upon which Tenn. Code Ann. § 48-2-122 is based, was modeled on federal securities laws.

10

states: "No action shall be maintained to enforce any liability created under this section, unless brought within one year after the discovery of the facts constituting the violation and within three years after such violation." 15 U.S.C.S. § 78i(e). Section 18 uses the same language, except it requires actions to be filed "within one year after the discovery of the facts constituting the cause of action and within three years after such cause of action accrued." *Id.* § 78r(c).

The *Leslie Fay* court decided to apply the limitations period from § 18, not § 9, to Rule 10b-5 contribution claims, because § 18's language is "consistent with the long-standing rule" that contribution claims accrue only after a judgment has been paid by a jointly liable defendant. 918 F. Supp. at 755. The court's clear implication was that § 9 – which, like the Tennessee Securities Act, starts the shorter period running upon "the discovery of the facts constituting the violation" – is not consistent with that rule. The *Asdar* court examined both sections and stated that, "despite the differing language, the statute['s three-year period] ordinarily begins to run under each section when a person commits the act that gives rise to liability under that section." 99 F.3d at 294-95. Nevertheless, given the "long-standing" and "fundamental" rules regarding accrual, the court held that the limitations period on a Rule 10b-5 contribution claim starts running only when a jointly liable defendant satisfies the judgment. *Id.* at 296.

The *Asdar* and *Leslie Fay* courts were explaining the contours of an implied right of action, so they were not necessarily bound by any particular statutory language. In contrast, this court is required to apply the Tennessee Securities Act as written. Because the Act's two-year repose period begins running upon discovery of the facts constituting the violation, the plaintiff's contribution claim is time barred.

11

### B. Fraudulent Concealment

The plaintiff argues in the alternative that Goff fraudulently concealed his role in the securities scheme, thus tolling the statute of repose. (Docket No. 19 at 6-8.) The statute of repose contained in the Tennessee Securities Act "may, in certain circumstances, be tolled by fraudulent concealment." *Montcastle v. American Health Sys.*, 702 F. Supp. 1369, 1374 (E.D. Tenn. 1988). But the plaintiff's argument focuses exclusively on whether Goff concealed his involvement from the plaintiff investors in the *Waldemar* cases, not from MAE and MAO&G. To establish fraudulent concealment, a plaintiff must show that "the defendant concealed material facts from *the plaintiff*." *Pero's Steak & Spaghetti House v. Lee*, 90 S.W.3d 614, 625 (Tenn. 2002) (emphasis added); *accord Evans v. Pearson Enters.*, 434 F.3d 839, 851 (6th Cir. 2006) (requiring "failure of the plaintiff to discover the operative facts"). The investors are not plaintiffs in the instant case, so any fraudulent concealment from them is irrelevant.

### CONCLUSION

For all the reasons discussed above, the Motion to Dismiss filed by Clinton C. Goff will be granted. The plaintiff's claim for breach of fiduciary duty remains.

An appropriate order will enter.

                                       ALETA A. TRAUGER
                                       United States District Judge